FRED C. EXTER, Appellant, v. AUGUST KRAMER ET AL.—291 S. W. 469.

Court en Banc, February 15, 1927.

**1. SPECIAL TAX BILL: Prima-Facie Evidence Only.** A special tax bill, in any action thereon, is by statute made prima-facie evidence of the regularity of the proceedings and of the liability of the property for the amount of the charges stated therein, but it is not conclusive evidence of its validity. When introduced in evidence it makes a prima-facie case for plaintiff in a suit to recover the amount thereof, and puts the burden on the owner of the property against which it is charged to prove any fact which will establish its invalidity.

**2. ———: Cost of Culvert: Assessment against Abutting Property: Statute.** The words "otherwise improving the roadway of streets" used in Subdivision 9 of Section 8753, Revised Statutes 1919, declaring that the city shall have power "to pay the cost of grading, paving, macadamizing and otherwise improving the roadway of streets, by levying a special assessment on the lots abutting on each side of the street," might be construed as authorizing the city to tax the cost of a culvert constructed in a zigzag way in the street for the length of a block, were it not for the words of Subdivision 3, which expressly give the city power "to pay the costs of bridges, culverts and footwalks across streets out of the general revenue fund of the city." But when both subdivisions are read together, and the rule requiring the statutory powers of cities to assess the cost of public

improvements against private property to be strictly construed is observed, it is plain that the Legislature did not intend to vest the city with power to tax the cost of constructing such a culvert against property abutting on the street.

3. ———: ———: **Attitude of Property Owners: Hearsay.** Testimony of the holder of the special tax bill that, at the time he made a bid to construct a culvert in the midst of a street, he inquired of the city engineer what was the attitude of the owners of the abutting property towards the construction and was told by the city engineer that all or a part of them favored it, is hearsay, and should be rejected.

4. ———: **Payment by Others.** In a suit upon a special tax bill issued to the contractor for constructing a culvert lengthwise of the roadway of a street, testimony that other owners had paid the special tax bills assessed against their property is immaterial.

5. ———: **Estoppel.** The facts set out in the opinion were substantial evidence to sustain the finding of the court that the property owner was not estopped to deny the validity of the special tax bill sued on.

Corpus Juris-Cyc. References: **Evidence,** 22 C. J., Section 167, p. 199, n. 36.   **Municipal Corporations,** 43 C. J., Section 30, p. 87, n. 62; 28 Cyc., p. 1106, n. 38; p. 1114, n. 37 New; p. 1170, n. 83; p. 1239, n. 61.

Appeal from Hannibal Court of Common Pleas.—*Hon. Madison C. Schofield,* Judge.

AFFIRMED.

*Rendlen & White* for appellant.

(1)   A tax bill by statute is prima-facie evidence of the validity of the bill, of the work and liability of the property to the charge stated in the bill.   It makes a prima-facie case.   Burden then rests on defendant of proving any fact on which he may rely to show its invalidity.   Subdivision 13, sec. 8758, R. S. 1919; Exter v. Kramer, 251 S. W. 918; Barber Asphalt Co. v. Ullman, 137 Mo. 560; Moberly v. Hogan, 131 Mo. 19; Huling v. Bandera Flag Stone Co., 87 Mo. App. 359; City v. Badgley, 73 Mo. App. 123; St. Louis v. Armstrong, 38 Mo. 29.   (a)   Assessment cannot be questioned except in case of fraud or manifest mistake and then only on "clear proof of great force."   Exter v. Kramer, 251 S. W. 918; 5 McQuillin on Munic Corp. secs. 2117, 4506; St. Louis v. Excelsior Brewing Co., 96 Mo. 677. (b)   It is the duty of this court "to assume that the municipal authorities have proceeded according to law, and not in violation thereof,  .  .  .  that public officers are presumed to have rightly acted until the contrary is clearly made to appear."   Defendant must unmistakably establish that the issuance of this tax bill does not conform to law.   Barber Asphalt Pav. Co. v. Ullman, 137 Mo. 568.   (2)   Property owners who sign petition for improvements,

urge on the city the work to be done, to be paid for by special assessments against their abutting property, as did defendants, are estopped to assert municipality or its officers had no power to make the improvement or to levy the assessment therefor. 5 McQuillin, Mun. Corp., sec. 2121. (a) Defendant is also estopped to contest the validity of the tax bills issued in payment therefor or to assert that the law under which the improvement was made is unconstitutional. Exter v. Kramer, 251 S. W. 918; Conde v. Schnectady, 164 N. Y. 258; State ex rel. v. Mitchell, 31 Ohio, 592; Columbus v. Sohl, 44 Ohio St. 479; Bidwell v. Pittsburg, 27 Am. Rep. 662. (b) Public works are undertaken, as everyone knows, under authority delegated by law to public officers, and there is little or no reason why a property owner who has full notice of what is being done should be allowed to ask for the work, stand by in silence until the work is completed, and then escape paying for the benefits his property has received. Johnson v. Duer, 115 Mo. 381; Herman on Estoppel, sec. 1221; Ross v. Stockhouse, 114 Ind. 200; Gibson v. Owens, 21 S. W. 1110. (3) The city had authority to order this improvement and to issue special tax bills therefor against abutting proprietors. Sec. 8758, R. S. 1919, sec. 9618, R. S. 1909. (a) It will be noted that independent of the amendment of Subdivision I, by Laws 1913, p. 535, the city had the broad right by the various subdivisions of Sec. 8758, R. S. 1919 (Sec. 9618, R. S. 1909), to pay for the cost of doing various things on the streets either out of the general revenue fund or by special assessment, the option being given to the city by the many subdivisions of the act, to choose its method of payment. The law is made flexible in the hands of the city authorities to be applied in their discretion.

*Joseph F. Barry* and *Berryman Henwood* for respondent.

(1) The statutory rule of evidence imperfectly quoted by appellant, in beginning his brief, is, by the language of the statute itself, applicable only to "special tax bills issued by any such cities for any purpose authorized by Sections 9618 to 9620, inclusive." The tax bill in suit was not issued for any purpose authorized by Sections 9618 to 9620 or any law of the State; hence the rule attempted to be invoked has no application or force in determining that point. (2) The City of Hannibal had no lawful authority to issue or cause to be issued, the special tax bill in suit or to levy a special assessment on the abutting property owners on Martin Street to pay for the culvert constructed therein. Neither its charter nor any law of the State vested it with such authority. Charter of Hannibal, Art. IV, sec. 61; R. S. 1909, sec. 9618; R. S. 1919, sec. 8758; Chillicothe ex rel. v. Henry, 136 Mo. App. 468; St. Louis v. Bell Tel. Co., 96 Mo.

623; St. Louis v. Bell Place Realty Co., 259 Mo. 126. The words "or otherwise improving the roadway of streets," following the particular words "grading, paving, macadamizing," in the same section, must be construed in connection with the latter particular words and restricted to improvements to the roadway of the same character and purpose. M. E. Church v. City of Wyandotte, 31 Kan. 721; 6 Words & Phrases, 5107. (3) The Act of March 25, 1913, purporting to repeal subdivision 1 of Sec. 9618, R. S. 1909, and enact a new subdivision in lieu thereof, is unconstitutional and void because said act is in fact an attempt to amend said section in violation of Section 34 of Article IV of the Constitution of Missouri, and it fails to set out said section as a whole, as amended. Laws 1913, p. 535; State ex inf. v. Herring, 208 Mo. 708; Cox v. Railroad, 174 Mo. 588; State v. Bennett, 102 Mo. 356; State ex rel. v. Miller, 100 Mo. 439; State v. Hendrix, 98 Mo. 374; Morrison v. Railroad, 96 Mo. 602; State v. Thurston, 92 Mo. 325; State v. Chambers, 70 Mo. 625.

GANTT, J.—This is a suit to enforce the lien of a special tax bill, issued by the city of Hannibal, for a street improvement made on Martin Street in that city, tried in the Hannibal Court of Common Pleas before the court, a jury having been waived. Judgment was for the defendants, and plaintiff appealed. The case was before this court on a former appeal. [251 S. W. 918.] It is stipulated between the parties that since the trial of this cause and pending appeal, the defendant Augusta Kramer, wife of defendant August Kramer, has died, and that title to the property in question was in August Kramer and Augusta Kramer as tenants by the entirety; and that upon the death of Augusta Kramer, the fee to said property vested in the defendant August Kramer.

The facts are as follows: Hannibal has less than thirty thousand inhabitants, and operates under a special charter. Respondent is the owner of the property abutting on Martin Street, and at this place there was a deep ditch, extending in a zigzag course lengthwise in the roadway of the street for a distance of about one block. This ditch, with the water at times running in it, made the street impassable for vehicular traffic. It is in evidence that the respondent and other owners of property abutting on the street at this place repeatedly petitioned and urged the city council to do the work necessary to make the street passable for vehicular traffic. It was determined by the city engineer that it was necessary in order to improve the street to construct a culvert, four feet square, in a zigzag direction, in the roadway of the street, for a distance of about one block. It is also in evidence that the abutting property owners agreed with the city to pay for a construction of a culvert if the city would grade the street. There is evidence that a written petition was pre-

sented to the city council, although it could not be found and was not introduced in evidence. Witnesses testified that abutting property owners appeared many times before the council and city engineer, and orally urged the improvement of the street. There was some evidence that respondent was present, with other property owners, at these appearances before the council and before the city engineer. There was no evidence that respondent signed a petition to the council asking that the improvement be made. Respondent denied that he was present at any council meeting or in the city engineer's office asking for or urging the improvement; and he denied the alleged agreement with the city council to pay, with other abutting property owners, for the construction of a culvert if the city would grade the street. Appellant and respondent engaged in conversation, near respondent's home, while the culvert was being constructed; and appellant testified that respondent stated he had been trying to get this work done for a long time, and he further testified that respondent made no protest against the construction of the culvert until after the work had been completed. Respondent lived about fifty feet from the place where the culvert was being constructed, and saw, without protest, the construction of the culvert. He denied that he made the above statement to appellant, and testified that he told appellant at the time of the conversation that he would not pay for the construction of the culvert. It is admitted that after the construction of the culvert and after the street at this place had been graded by the city, it was passable for vehicular traffic, and that the improvement was beneficial to the property abutting on this part of the street. Lot 15 in Block 11 of Wardlaw's Addition, although abutting on Martin Street, was omitted from the original ordinance and from the assessment ordinance. Lots 9, 10, 11 and 12 in Block 14 of Wardlaw's Addition, although not abutting on Martin Street, were included in these ordinances and assessed as benefited by the improvement. The contract provided for the payment of about $1500 for the construction of the culvert. There is no evidence that the work was not properly done, although abutting property owners, including the respondent, petitioned the council, after the completion of the culvert, to reject the same on the ground that the work was not properly done. On completion of the culvert in due time and its acceptance by the city, the tax bill for $69.60, in suit, was issued to the appellant, and he made demand on respondent for payment.

Suits are pending on other tax bills, and it was agreed and stipulated that a decision in this case shall decide all the cases.

The petition is in the usual form, with the tax bill annexed thereto. The answer challenges the authority of the city to issue the tax

bill in question. The reply contains a plea of estoppel, with the facts set forth upon which plaintiff relies to make his case of estoppel. Appellant relies on Section 8758, Revised Statutes 1919 (formerly Sec. 9618, R. S. 1909), to sustain the issuance of tax bill. The section is divided into subdivisions, and the subdivisions involved in this case are as follows:

"I. To have exclusive control and power over the streets; to grade, pave, macadamize, gutter, curb, oil and otherwise improve streets, avenues and alleys . . .

"II. To construct and repair sidewalks, bridges, culverts, sewers, crosswalks, and to exercise exclusive control over streets, avenues and alleys, and to establish grades therefor.

"III. To pay the cost of bridges, culverts, public sewers and footwalks across streets, avenues and alleys out of the general revenue fund of the city.

"IV. To pay the cost of grading streets, avenues and alleys by levying a special assessment on all lots and tracts of land fronting or abutting on the improvement . . . which shall be paid as hereinafter provided, in proportion to the front foot thereof.

"VI. To pay the cost of grading, paving, macadamizing, repairing and curbing streets, avenues and alleys out of the general revenue fund if the council so order.

"IX. To pay the cost of grading, paving, macadamizing and otherwise improving the roadway of streets, avenues and alleys . . . which shall be paid as hereinafter provided by levying a special assessment on the lots and tracts of land fronting or abutting on either side of said street, avenue or alley along the distance improved in proportion to the front foot."

Appellant calls attention to the fact that by statute, tax bills in any action thereon are made prima-facie evidence of the regularity of the proceeding for such special assessments; of the validity of the bills for doing the work; of the furnishing of materials charged, and of the liability of the property to the charge stated in the bills. This does not mean the tax bills are conclusive as to their validity. When introduced in evidence, a prima-facie case is made, and the burden is on the defendant to prove any fact on which he is relying to show their invalidity. The cases cited by appellant so hold. [Sub. XIII, Sec. 8758, R. S. 1919; Barbour Asphalt Co. v. Ullman, 137 Mo. l. c. 560; Moberly v. Hogan, 131 Mo. 19.]

If the city had the authority to construct the culvert and tax the cost to abutting property owners, it must be found in the above subdivisions of said section.

Municipal charters are to be strictly construed, and the rule is clearly set forth in the following quotation from a standard text:

"The right to levy local assessments is regarded as an extraordinary one, and it cannot be deduced from the general words of an act incorporating a municipal incorporation, unless the words employed assume to grant, and do clearly grant, that right. The words of a statute assuming to grant the authority to levy local assessments will not be extended by construction, for as against the corporation asserting the authority the construction is strict, and nothing in its favor will be intended except such matters as are clearly implied from the express words of the statute. It is, indeed, the general rule that municipal charters are to be strictly construed, but the rule seems to be even more rigidly enforced in cases where the right to impose a burden upon private individuals is claimed than in cases of a different class, and the courts have sternly kept corporations within the limits of their charters in all cases where a right to levy a special assessment is involved. The power is purely a derivative one, and it is not only fettered by all the limitations contained in the statute which delegates it, but it has no existence beyond the scope which a strict construction will yield. It is, therefore, always essential that one who bases a claim upon a local assessment shall show the foundation for his claim to be a valid statute, and that upon a strict construction of that statute against him his claim is within the authority which the statute confers." [Vol. 2, sec. 664, Elliott on Roads and Streets.]

Appellant seeks the authority to make the assessment and issue the tax bill in the words, "*otherwise improving the roadway of streets,*" found in Subdivision IX of the above statute; and he contends that these general words following immediately the particular words of description, "grading, paving, macadamizing," include improvements of a class different from the class indicated by the particular words, and, therefore, include the construction of culverts in streets; and that the city was authorized by Subdivision IX of said section to pay for the construction of the culvert by a special assessment against the abutting property of respondent and the issuance of a tax bill against the respondent as a lien against his property. In further support of the construction he contends for, appellant says: "Subdivision I gave power to do these various things to-wit: 'To grade, pave, macadamize, gutter, curb, oil *and otherwise improve streets,*' and then later on provided that the same might be paid in the manner that the council might deem desirable in the premises."

Respondent contends that said general words immediately following the said particular words of description, in Subdivision IX, only

authorize the city to make such improvements as belong to the class indicated by the particular words of description, and, therefore, the city was without authority to assess the cost of construction of the culvert against the property of the respondent and to issue a tax bill as a lien against his property. And that so far as Subdivision 1 of the statute is concerned it is unconstitutional, because adopted as an amendment to Section 9618, Revised Statutes 1909, by an act of the Legislature which failed to set out the section as a whole, as amended. [Laws 1913, p. 535.]

As the identical language of Subdivision I, to-wit: "To grade, pave, macadamize, gutter, curb, oil *and otherwise improve streets,*" was contained in said Section 9618 prior to its amendment by the Act of 1913, we deem it unnecessary to pass on the constitutional question raised. Recurring then to the provisions of Subdivision IX, what was the intention of the Legislature as expressed in these general and particular words? The intent of the Legislature should be determined from a consideration of all the subdivisions of this section of the statute relating to the improvement of streets and providing for the payment of the cost of the improvement. When so considered, we find that the city is expressly given the authority to either pay the cost of grading, paving and macadamizing the streets out of the general revenue fund of the city, or by levying a special assessment on the lots and tracts of land fronting or abutting on either side of the street along the distance improved in proportion to the front foot. We further find that the city is expressly given the authority to pay for the cost of culverts out of the general revenue fund of the city. The city is given no express authority to pay for the construction of culverts by levying a special assessment on the property fronting or abutting on the street.

Appellant contends that the authority to pay for the construction of culverts by levying a special assessment on the property fronting or abutting on the street is to be found hidden in the general words, "*and otherwise improving the roadway of the streets.*" We do not think so. Of course, said general words taken literally and standing alone do include culverts, but the Legislature having expressly provided that culverts are to be paid for out of the general revenue fund of the city, we hold that said general words are restricted in their meaning to improvements other than culverts. This intention of the Legislature being clear from the language as expressed in Subdivision III, relieves us of the necessity of calling to our aid rules of construction suggested by appellant and respondent.

It will be noted that the authority of the city to construct both bridges and culverts is found in Subdivision III. Now, if appellant's contention is correct, the city would have the authority to con-

struct a bridge at this place in the street lengthwise for about a block, and, by ordinance, to assess the cost of the construction of said bridge against the abutting property owners. We do not believe the Legislature so intended.

Appellant complains of the action of the trial court in excluding evidence that the plaintiff at the time he made a bid for the work inquired of the city engineer concerning the attitude of the abutting property owners toward the construction of the culverts and that he was informed by the city engineer that all or a part of the abutting property owners were in favor of the construction of the culvert. This evidence is hearsay and was properly excluded. He further complains of the action of the trial court in excluding evidence that one of the abutting property owners had paid the tax bill issued against his property. This fact was immaterial.

On the issue of estoppel there was substantial evidence to sustain the finding of the court.

It necessarily follows that the judgment of the trial court should be and is affirmed. It is so ordered. All concur, except *Graves, J.,* absent.