This is a suit for the construction of certain contracts made between complainant and defendant in relation to water obtained by complainant, hereafter referred to as the Company, from defendant, hereafter referred to as Bayonne. When the agreements were made Bayonne was receiving its water supply from the East Jersey Water Company through two mains extending through Kearny and Jersey City and thence to Bayonne. Some water was being sold by Bayonne to consumers on the Kearny Meadows, including the Company.
Prior to the making of the agreements now to be construed, the portion of the mains located in Kearny were on rights of way through land owned by the Company. Bayonne desired to replace the existing mains by larger ones and an additional main. As a result the agreements now in controversy were entered into. In general, the agreements provided that Bayonne's rights of way through the Company's properties should be relocated. The cost of replacing the old mains, which was estimated at $500,000, should be arranged for in the following manner. The Company was to pay Bayonne in advance $150,000 for water to be taken by the Company as needed, which amount was to be first applied by Bayonne toward defraying such cost and then when this sum had been expended the Company was to pay the bills therefor not to exceed an additional amount of $350,000. That Bayonne would furnish water to the Company at the *Page 477 
same rates as it did to other consumers of a substantially equal amount. The agreements recite that this arrangement was "to the mutual benefit of the parties hereto."
The Company paid the $150,000 "pursuant to and in accordance with the agreement providing for such payment." The mains were rebuilt and relocated. Bayonne began to supply the water and is still supplying it.
As of January 1st, 1923, the board of public utilities of New Jersey increased the rate that Bayonne was required to pay to the East Jersey Water Company.
In February, 1925, two years later, Bayonne, by resolution, sought to increase the rate to be paid by the Company for all water theretofore furnished as well as for water thereafter furnished.
There is no dispute as to the quantity of water involved; the sole difference is as to the construction of the rate clauses governing the prices to be paid by the Company.
The Company contends that under the agreements it is entitled to receive water from Bayonne at the same rates as Bayonne currently charges consumers of an equally large quantity of water, either in Kearny or Bayonne. Bayonne contends that it can fix any rate provided said rate does not exceed that charged to any other equally large consumer in Kearny.
The Company objects to a retroactive increase. Bayonne maintains the contrary.
Under agreement No. 3 it is provided as follows:
"The company agrees * * * (b) to purchase from the city and to pay in advance for the same at the time of the commencement of the work to be done by the city as hereinafter described, water of the value of $150,000, to be furnished and delivered from time to time to the company from the pipe lines and water plant of the city as needed by the company to be measured by meter and charged for at the current prices of water sold by the city at such times for consumers of an equal quantity."
This is a general clause and I do not see how it can be limited to equally large consumers in Kearny. It seems to me that the water must be furnished at the same price as was *Page 478 
currently charged by Bayonne to any other consumers of equal quantity either within or without Bayonne.
All water furnished to any consumer must of necessity be furnished "from the pipe lines and water plant of the city." That is exactly what this clause provides.
Bayonne itself seems to have construed the agreement in this way. In 1919 the city commissioners unanimously adopted the following resolution:
"Resolved, that all water sold on the Kearny Meadows other than that sold to county for municipal purposes shall be at the rate of $1.20 per thousand cubic feet. This does not include water sold under contract."
From this it appears that Bayonne recognized its obligation under the agreement above referred to and realized that it could not alter the rate. What has heretofore been said relates to the rates to be paid for water paid for in advance under agreement No. 3.
The clauses providing for rates to be charged after the water paid for in advance under agreement No. 3 had been consumed are contained in agreements Nos. 1 and 2.
The clause in each of these agreements which is to be construed is as follows:
"The city, its successors and assigns in so far as it and they shall from time to time have the legal right so to do, shall furnish to the Shipbuilding Company, its successors and assigns, upon demand in writing, water from the pipes laid on said rights of way hereby granted to the city by the Shipbuilding Company at the minimum market rate paid by any consumer of an equal quantity of water from said pipe lines so long as said pipes shall remain upon said rights of way or any part thereof."
The circumstances surrounding the making of these contracts should be considered. They state that the "mutual benefit of the parties" requires the relocation of the water mains. To accomplish this object Bayonne sought and the Company gave substantial financial aid. It is natural to suppose that the Company expected to receive in return the same favorable terms as might be granted any other large consumers, and on the contrary it is impossible to believe that *Page 479 
the Company, when it advanced so large a sum of money, contemplated that it should pay for water any price that any other large consumer on the Kearny Meadows — who had contributed nothing — was charged, although other equally large consumers in Bayonne were charged a lower rate. I do not believe either party to the contract ever intended any such thing.
The resolution of Bayonne attempting to retroactively increase the rate to be paid by the Company is void. First, because it attempts to destroy rights vested in the Company by the contract.
The authority given to Bayonne to make the contract is contained in section 9 of article 32 of the Home Rule act of 1917 (2 Cum. Supp. Comp. Stat. — 1924 — p. 2299), which provides that —
"The governing body may enter into a contract with any person or persons, corporation or corporations, to supply such person or persons, corporation or corporations, with water for fire protection, manufacturing and irrigation and other special purposes, at rates and upon conditions to be designated by said governing body, and upon any such contract being entered into the person or persons, and corporation or corporations, shall pay to the municipality the rate and all other charges stipulated therein, instead of the usual rates charged in the municipality; * * *"
No power is reserved to Bayonne in this statutory enactment to retroactively increase a rate fixed by contract made pursuant thereto. In Amarillo Gas Co. v. City of Amarillo (Tex. App.1919), 208 S.W. Rep. 239, the court said:
"One of the first questions suggested in the consideration of appellant's rights in the premises is whether the appellant can rightfully apply the rates fixed by the new ordinance to the gas consumed by its customers before the ordinance went into effect, * * *. There was an implied contract between the gas company and the consumer using gas prior to November 18th, that such gas would be paid for at the rate established by the ordinance then in effect. Any law that would retroact so as to change the substantial rights and obligations of this contract as to transactions already had under it would be to that extent unconstitutional and void. * * * The rates established by the new ordinance did inevitably make a substantial change in the rights and obligations of the consumer, and we conclude cannot be applied to the gas consumed prior to the time the ordinance took effect." *Page 480 
Apart from section 9 of article 32 of the Home Rule act of 1917, governing the making of contracts for the supply of water, the only authority that Bayonne has for supplying water is found in section 8 of the same article (2 Cum. Supp. Comp. Stat. —1924 — p. 2299), which reads as follows:
"The governing body of every municipality providing and supplying water for the public and private use of such municipality and its inhabitants may make, enforce, amend and repeal all such ordinances, resolutions and regulations as said body may deem necessary and proper for the distribution, supply, use and protection of the said water and the safety, security and protection of the said buildings, machinery, canals, aqueducts, reservoirs and other works and appurtenances thereto, for the installation and protection of meters, and for fixing and collecting the water rents or prices for water, and for imposing penalties in addition to cutting off the water for non-payment thereof."
A municipal corporation, being a creature of the state, possesses only such power as the state confers upon it.Breninger v. Belvidere, 44 N.J. Law 350; State, Terhune v.City of Passaic, 41 N.J. Law 90, 93. And in construing a grant of power to a municipality any fair reasonable doubt concerning the existence of the power is resolved against the municipality and the power is denied. Meday v. Rutherford, 65 N.J. Law 645,648.
The last quoted provision of the Home Rule act grants no power to Bayonne to make retroactive water rates, but only the power to fix and collect the water rents, and prices established in advance for the service to be rendered. See Jones v. Town ofBloomfield, 69 Atl. Rep. 1106.
Moreover, the resolution in addition to attempting to retroactively increase the Company's contract rate also attempts to discriminate against it in two important respects by (1) seeking to increase it from $1 to $1.75 per one thousand cubic feet while only increasing the rate of all consumers in Bayonne taking water "for manufacturing use" to a sliding scale rate of from $1.50 to $1.75 per one thousand cubic feet; and (2) seeking to so increase the Company's rate from January 1st, 1923, while making no increase whatever for water taken "for domestic use" prior to January 1st, 1925. *Page 481 
Its contract with Bayonne entitled it to the same rate as is currently charged other equally large consumers, who, as the record shows, are some of those taking water from it "for manufacturing use." Nor could those taking water "for domestic use" thus be effectively given the right at the expense of the Company to have their old and smaller rates continued for two years after that of the Company was sought to be increased.
For the reasons above stated I am of the opinion that the construction placed on the contracts as above is the correct one, and the only reasonable one to be deduced from the contracts themselves and the circumstances surrounding their making and carrying out. This, as I understand the testimony and the briefs, leads to the fixing in the decree of the following rates:
From July 1st, 1919, to February 1st, 1925, $1 per thousand cubic feet. From February 1st, 1925, until Bayonne shall change the rate to other equally large consumers for water supplied from said pipe lines, a sliding scale of from $1.50 to $1.75 per one thousand cubic feet.
I will advise a decree accordingly.