** Summary ** CONSTITUTIONAL LIMITATION ON LEGISLATIVE POWER TO REISSUE CERTAIN BONDS The Legislature would not be empowered to sell or reissue additional bonds if the original indebtedness is reduced below the Two Hundred Fifty Million Dollar ($250,000,000) figure. The Attorney General has considered your opinion request of February 17, 1972, wherein you ask the following question: "Will the Legislature, pursuant to the proposed Constitutional Amendment referred to the people by House Joint Resolution 1037, be empowered to sell additional bonds if the original indebtedness is reduced below $250,000,000?" You refer specifically to the language found in the ballot title of House Joint Resolution 1037, which reads: "Shall a Constitutional Amendment: "Authorizing Legislature to enact legislation whereby the State may become indebted not to exceed Two Hundred Fifty Million Dollars ($250,000,000), for the purpose of providing safe highways, eliminating hazardous highway conditions, acquiring, constructing, reconstructing, extending and improving highway facilities; specifying expenditures in existing districts; providing debt payment from a portion of existing gasoline tax allocated to State Highway Departments, and other unobligated funds; if such funds should become insufficient, then from other State income; creating bond commission and sinking fund, directing investments; Attorney General to perform legal work; providing issuance of general obligation bonds with full face and credit of State." (Emphasis added) Particularly, you query as to the interpretation of the language "authorizing Legislature to enact legislation whereby the State may become indebted not to exceed Two Hundred Fifty Million Dollars ($250,000,000). " Article X, Section 25
of the Oklahoma Constitution specifies the manner in which the State may become indebted, that section provides: "Except the debts specified in Section Article X, Section 23 and Article X, Section 24 of this Article, no debts shall be hereafter contracted by or on behalf of this State, unless such debt shall be authorized by law for some work or object, to be distinctly specified therein; and such law shall impose and provide for the collection of a direct annual tax to pay, and sufficient to pay, the interest on such debt as it falls due, and also to pay and discharge the principle of such debt within twenty-five (25) years from the time of the contracting thereof. No such law shall take effect until it shall, at a general election, have been submitted to the people and have received a majority of all the votes cast for and against it at such election. On the final passage of such bill in either House or the Legislature, the question shall be taken by ayes and nays, to be duly entered on the journals thereof, and shall be: 'Shall this bill pass, and ought the same to receive the sanction of the people?' " The present question is to be submitted to the people pursuant to Section 25 authorization. Historically, general obligation bond issues made pursuant to Constitutional Amendment have incorporated the language "not to exceed" an amount certain. Article X, Section 34 of the Oklahoma Constitution authorizing the creation of the State Industrial Finance Authority employed alternative language in establishing the State's debt limitation; that Constitutional Amendment reads in pertinent part: " . . . Authority shall be, and is hereby, authorized to issue and sell State Industrial Finance Bonds in such amount as shall be needed from time to time for the purposes herein provided, not to exceed in the aggregate Ten Million Dollars ($10,000,000) outstanding at any one time, . . ." Apparently, Section 34 authorization contemplates intermittent bond issues "from time to time" insofar as the aggregate indebtedness "at any one time" does not exceed the debt limitation of Ten Million Dollars ($10,000,000). As heretofore stated, the traditional language employed for prescribing bond debt limitations has been "not to exceed" an amount certain; these words are used in every prior general obligation authorization, as illustrated by Article X, Section 33, Article X, Section 36, Article X, Section 37 and Article X, Section38 of the Oklahoma Constitution. To evidence legislative intent, we cite Article X, Section 36 and Article X, Section 38, both authorizing bond issues and employing the language "not to exceed," the proceeds of which are proportionately directed to the improvement of the University of Oklahoma Medical Center. Article X, Section 36 was adopted December 3, 1963, and Article X, Section 38 on December 10, 1968; if the initial Section 36 authorization was construed to allow a sustained or perpetual indebtedness of Seven Million Dollars ($7,000,000), Section 38 would have been rendered a needless Constitutional Amendment. We must therefore assume that the legislature, being advised of the language incorporated in all prior general obligation issues, together with the knowledge that the terms of Article X, Section 34, provide for recurring issues with an aggregate limitation of Ten Million Dollars ($10,000,000), intended Joint House Resolution 1037 to prescribe a total debt limitation of Two Hundred Fifty Million Dollars ($250,000,000). Specifically, the legislative design is to allow the aggregate indebtedness incurred under the proposed amendment to reach a maximum debt of Two Hundred Fifty Million Dollars ($250,000,000), and thus would preclude a reissue of bonds for those retired. Most certainly, the Legislature would have employed the language of Article X, Section 34, had their intention been to allow recurring issues, sustaining a Two Hundred Fifty Million Dollar ($250,000,000) perpetual indebtedness. It is an elementary precept of general obligation bond law that bonds authorized by Constitutional Amendment, unless otherwise stated, are authorized only for the specified purpose and not to exceed the stated amount. To hold otherwise would repudiate the rationale underlying all general obligation bond issues. For example, to hold that the debt limitation pertains only to the amount of bonds outstanding at any one time would effectually obviate the need for future general obligation bond elections, as new bonds could be reissued up to the previously authorized amounts. Oklahoma Courts have never considered the precise meaning of the phrase "not to exceed;" one of the better reasoned cases dealing with this question is Montgomery v. Martin,294 Pa. 25, 143 A. 505, wherein the Supreme Court of Pennsylvania was asked to enjoin the printing of bonds sought to be reissued under the initial constitutional authority. The syllabus in that case reads: "Constitution, Article IX, Section 4, authorizing State to issue bonds for purpose of improving and building highways, held not to permit legislature to authorize money to be borrowed in such amounts that maximum of outstanding bonds should never exceed at any one time, amount so named, but only to authorize issue of bonds to amount named in proviso without right to reissue bonds in place of those theretofore retired." (Emphasis added) Application of this rule to municipal corporations is found in the case of Council of City of Hamtramck v. Matulewicz, 285 Mich. 390,280 N.W. 801, the Supreme Court of Michigan held a subsequent issue of bonds to be in excess of the debt limitation when the total sum of the issues exceeded the statutory limit. The syllabus in that case reads, to-wit: "A city which had issued bonds to raise funds for the release of unemployment was not authorized to later issue additional bonds to the alleged relief of a subsequent calamity of unemployment and a sum rendering the combined total of the issues in excess of the statutory and charter limit for calamity relief, notwithstanding that city had refunded its entire bonded indebtedness by new issues which absorbed the original calamity issue by merging it with others." In view of Oklahoma's prior Constitutional Amendments authorizing general obligation bond issues, and the language employed therein, it is explicit that such authorizations extend only to the issuance of the aggregate amount stated in the amendment. This conclusion is buttressed by a reading of Article X, Section 34, of the Oklahoma State Constitution, wherein the conventional language was abandoned to allow recurring issues thereby authorizing a sustained Ten Million Dollar ($10,000,000) indebtedness. It is therefore the opinion of the Attorney General that your question be answered in the negative. The Legislature would not be empowered to sell or reissue additional bonds if the original indebtedness is reduced below the Two Hundred Fifty Million Dollar ($250,000,000) figure. (Michael D. Tinney)