CITY OF MUSKEGON HEIGHTS v. DANIGELIS.

1. MUNICIPAL CORPORATIONS—AUTHORITY TO ISSUE BONDS—"CALAMITY"—"EMERGENCY."

Distress of inhabitants of city due to widespread unemployment constitutes "calamity" within meaning of home-rule act, justifying city council in declaring emergency existed requiring issuance of bonds to relieve said distress under provisions of its charter and 1 Comp. Laws 1929, §§ 2231, 2241, subd. e.

2. ACTION—DECLARATORY JUDGMENTS—APPLICABILITY OF STATUTE.

Where controversy existed between city and certain taxpayers as to validity of bonds issued by city to relieve distress and suffering due to unemployment of inhabitants, and issues of fact were presented, evidence taken, and points of law raised in circuit court, Act No. 36, Pub. Acts 1929, authorizing courts of record to make binding declaration of rights, was applicable.

On the question as to what is "emergency" which will authorize an extra tax, see annotation in 52 L. R. A. (N. S.) 676; 17 A. L. R. 586.

Appeal from Muskegon; Vanderwerp (John), J. Submitted February 14, 1931. (Docket No. 167, Calendar No. 35,561.) Decided February 23, 1931.

Bill by City of Muskegon Heights against George Danigelis and another to declare a bond issue valid under the declaratory judgment act (3 Comp. Laws 1929, § 13903 *et seq.*). From decree declaring the bonds valid, defendants appeal. Affirmed.

*William J. Balgooyen,* for plaintiff.

*Lou L. Landman,* for defendants.

*Ganson Taggart, amicus curiæ.*

WIEST, J. This is a proceeding under Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 *et seq.*), authorizing courts of record to make binding declarations of rights.

A controversy exists relative to the validity of bonds authorized by the city of Muskegon Heights to raise money for the relief of destitute inhabitants. The city petitioned the circuit court to make a declaration of rights in the premises and summoned two principal taxpayers to reply and present issuable questions. Issues of fact were presented, evidence taken, points of law raised, and the court found the bonds valid. We review by appeal.

Widespread and acute distress exists among unemployed inhabitants of the city. This was brought to the attention of the city council by many taxpayers. The budget fund for relief of the poor was exhausted. In November, 1930, the city council declared the existence of an emergency justifying the issuance of bonds to the amount of $25,000, and so legislated under authority assumed to be given by subdivision 3, § 91, chap. 9, city charter.

The city operates under a home-rule charter. The bidder, acting upon the advice of counsel, declined to take the bonds because of questioned validity thereof. The city charter, chap. 9, § 91, provides:

"The city commission is hereby authorized to borrow money, and issue bonds for the payment therefor for the following purposes: * * *. (3) For emergency purposes in accordance with the provisions of the home rule act of the State of Michigan."

The home rule act, 1 Comp. Laws 1929, § 2231, provides:

"Each city may in its charter provide:
"(1) For the borrowing of money on the credit of the city and issuing bonds therefor, for any purpose within the scope of its powers: Provided, That the net bonded indebtedness incurred for all public purposes shall not at any time exceed ten per centum of the assessed value of all the real and personal property in the city: Provided further, That in case of fire, flood or other calamity, the legislative body may borrow for the relief of the inhabitants of the city and for the preservation of municipal property, a sum not to exceed one-fourth of one per centum of the assessed value of all the real and personal property in the city, due in not more than three years, even if such loan would cause the indebtedness of the city to exceed the limit fixed in its charter."

This statute places a limitation upon bonded indebtedness, permits extension in case of fire, flood, or other calamity, but then only for the relief of the inhabitants or preservation of municipal property. The home rule act, 1 Comp. Laws 1929, § 2241, subd. (e), clothed the municipal legislative body with power to authorize an issue of emergency bonds as defined by the act, without any action by the elec-

tors. If the distress of the unemployed inhabitants of the city constituted a condition or situation coming within the term "calamity," as employed in the statute, then the bonds, as authorized, are valid. Can it be said that the term "calamity," as employed in the statute, relates to a condition not occasioned by a disaster but under which deep distress is occasioned many inhabitants? The statute provides for relief in case of fire. Such relief, of course, does not extend to compensation for loss of property, but only to alleviation or prevention of suffering occasioned by such a disaster. In case of flood the municipality restores no private loss but may extend relief to distressed inhabitants. On the other hand the term "calamity" is found in the statute in the company of other terms, clearly indicating physical causes occasioning human want and suffering. If the term "calamity" is held to point solely to a disaster or catastrophe occasioning human distress, and, therefore, to exclude relief of acute misery arising from want occasioned by lack of employment, then the bonds are invalid.

The legislature mentioned two causes possible of occasioning acute distress, and then, to cover other causes entailing distress, employed the generic term "or other calamity." A decimating pestilence requiring cessation of business, causing unemployment and consequent deprivation of means of livelihood, and occasioning misery and distress for want of sustenance, would constitute a calamity justifying relief beyond sending around a wagon, as in olden times, and crying "bring out your dead." The legislature had the purpose of permitting measures to relieve widespread suffering occasioned by any acute cause, depriving inhabitants of means of support and entailing misery. The statute contemplates

the occurrence of an unexpected event of sufficient magnitude to cause widespread want and consequent suffering to inhabitants.

"Calamitas," the Latin forerunner of the word "calamity," appears in Calepini's Dictionarium Octo Linguarum (Ed. 1620), and is there defined in English to denote "miserie, calamitie, the breaking of the stalkes of cornes by tempest." In Richardson's dictionary it is stated: "A calamity then, primarily, is that which destroys the standing corn; then—any injury, hurt, mischief, damage, loss, misfortune." At an early date the term was coined to express the loss of food occasioned by drought or storm, and resulting in human suffering. Webster's New International Dictionary (Ed. 1926), under the head "Calamity," states: "A state of deep distress or misfortune, produced by some adverse circumstance or event; misery. * * * Any great misfortune or cause of loss or misery;—usually an event or disaster that produces extensive evil." See, also, 9 C. J. p. 1116.

We hold the term, as employed in the statute, is not limited to distress occasioned by physical forces, but extends. to an overwhelming adversity, such as widespread inability to obtain employment and distress occasioned thereby. This construction rightly accords to the members of the legislature humanitarian intent.

This brings us to the question of whether an emergency existed justifying issuance of the bonds.

The city council deemed "that the exhaustion of funds for relief of city poor constituted an emergency." The distress among inhabitants was acute and occasioned by an extraordinary event; want and misery, occasioned by unemployment, was widespread and demanded prompt alleviation. The fund

for the relief of the poor was exhausted, and the winter season at hand. The city council was confronted by a most serious condition existing among inhabitants, as disclosed by the proofs, and there existed an emergency justifying resort to the extraordinary method for relief of misery authorized by the statute and the city charter.

Defendants contend that this proceeding does not come within the provisions of the act authorizing courts of record to make binding declarations of rights.

Under former practice a friendly suit would have been brought, entertained, and right in the matter adjudicated. Now, under the declaratory judgment act, there is presented issuable questions of fact and law of great public moment, and, if the act is to serve at all, it must be permitted to serve in this instance.

The authorized bonds are valid, and the decree in the circuit court is affirmed. No costs.

BUTZEL, C. J., and CLARK, McDONALD, POTTER, SHARPE. NORTH, and FEAD, JJ., concurred.