DEPARTMENT OF TRANSPORTATION v THRASHER

Docket No. 95199. Argued November 3, 1993 (Calendar No. 8). Decided August 2, 1994.

The Department of Transportation brought an action in the Antrim Circuit Court against Leroy E. Thrasher, Randall and Charlene Bergdoll, and Robert and Vallerie Johnston, seeking a declaration limiting its liability for damages arising from injuries received by the Johnston's children in an accident involving one of its employees to the percentage authorized by MCL 600.6304; MSA 27A.6304. The Bergdolls owned, and Thrasher drove, the vehicle in which the children were riding when the accident occurred. All three settled with the children's parents before the parents brought an action against the department in the Court of Claims. The court, Charles M. Forster, J., granted summary disposition for the defendants and dismissed the action. The Court of Appeals, DOCTOROFF, C.J., and MICHAEL J. KELLY and R. B. BURNS, JJ., affirmed, finding that MCL 600.6304; MSA 27A.6304 does not require the trier of fact to ascertain the percentages of fault of joint tortfeasors who have settled with the injured party and are not parties to a lawsuit between the injured party and the remaining tortfeasor. The Court reasoned that the plain language of § 6304 refers to parties to the action, and, because the owners and driver were not parties to the action, the circuit court was not required to determine their percentages of fault (Docket No. 130666). The department appeals.

In an opinion by Justice BOYLE, joined by Justices RILEY, GRIFFIN, and MALLETT, the Supreme Court held:

The Department of Transportation is not entitled to have the factfinder determine the fault of settling tortfeasors.

MCL 600.6304; MSA 27A.6304 does not provide for consideration by the factfinder of the fault of released parties. Where a plaintiff is not at fault, the risk of nonrecovery falls on the defendant, and the plaintiff recovers under joint and several liability. Where a plaintiff is at fault, the fault of nonsettling defendants is apportioned among all the parties, who pay according to fault. The total judgment is reduced only by the settlement amount, and the problem of double setoff is avoided.

Justice LEVIN, joined by Chief Justice CAVANAGH and Justice

BRICKLEY, concurring, stated that MCL 600.6304; MSA 27A.6304 provides only for findings by the jury or the court of the percentages of fault of each plaintiff, defendant, and third-party defendant who is a party to the action. It does not provide for findings by the jury or the court of the percentages of fault of tortfeasors who may have settled with injured persons.

Affirmed.

196 Mich App 320; 493 NW2d 457 (1992) affirmed.

*Frank J. Kelley,* Attorney General, *Thomas L. Casey,* Solicitor General, and *Brenda E. Turner,* Assistant Attorney General, for the Department of Transportation.

*Read & Sharp* (by *John W. Sharp*) for defendants Thrasher and Bergdoll.

*Hoffman & Hoffman* (by *Robert L. Hoffman*) for defendants Johnston.

Amicus Curiae:

*Bodman, Longley & Dahling* (by *Jerold Lax*) for Michigan Municipal Liability and Property Pool.

BOYLE, J. The issue presented in this case is whether MCL 600.6304; MSA 27A.6304 permits the factfinder in a personal injury action to consider the fault of settling tortfeasors. A comparison of MCL 600.6304; MSA 27A.6304 to its legislative roots, the Uniform Comparative Fault Act and House Bill No. 5154, confirms the Court of Appeals conclusion that the statute does not allow for such factfinder consideration.

I

FACTS

This action for a declaratory judgment was com-

menced by the MDOT against the owners[1] and driver[2] of, and parents[3] of two children who were passengers in, a pickup truck that collided with a truck driven by an MDOT employee. The parents had filed an action in the Court of Claims against the MDOT in January, 1989, which was consolidated with this action for a declaratory judgment some time after this action was commenced in October, 1989. The owners and driver settled with the parents without suit by paying insurance limits of $50,000 to one child and $4,000 to the other child.

The MDOT seeks a declaration in this action determining the percentages of fault of the owners and driver "in causing the accident and any damages which may be awarded in the Court of Claims, and limiting the liability" of the MDOT for damages to the parents in the Court of Claims action to that percentage authorized by § 6304.

The circuit court granted summary disposition, dismissing this action, and the Court of Appeals affirmed. The MDOT argued that it, the nonsettling tortfeasor, is entitled under § 6304 to have the percentages of fault of the owners and driver, the settling tortfeasors, determined by the trier of fact, with the nonsettling tortfeasors' liability limited to its "calculated percentage of fault." The Court of Appeals ruled against the MDOT, stating that § 6304 "does not require the trier of fact to ascertain the percentages of fault of joint tortfeasors who have settled with the injured party and are not parties to a lawsuit between the injured party and the remaining tortfeasor."[4]

---

[1] The owners were Randall and Charlene Bergdoll, individually, and doing business as B & H Towing & Recovery.

[2] The driver was Leroy E. Thrasher.

[3] The parents were Robert and Vallerie Johnston, individually, and as guardians and conservators of the estates of Shyrle James Johnston and John Daniel Johnston.

[4] 196 Mich App 320, 322-323; 493 NW2d 457 (1992).

The Court of Appeals focused on the language of § 6304, which it said "provides that in a personal injury action 'involving fault of more than 1 party to the action,' the trier of fact shall determine the 'percentage of the total fault of all the parties regarding each claim as to each plaintiff, defendant, and third-party defendant.' "[5]

The Court of Appeals reasoned that the "plain language" of § 6304 "refers to 'parties' to the action,"[6] that the owners and driver were not parties to this action, and concluded that the circuit court was not required to determine their percentages of fault. The Court of Appeals observed that an earlier version of the 1986 tort reform act provided that "a percentage of the total fault would be made not only among parties to the action, but also among persons who had been released from liability," but that language was deleted from the final version of the act. The Court of Appeals said that this change in the bill was "persuasive evidence that the Legislature did not intend the result argued by the MDOT."[7]

II

THE UNIFORM COMPARATIVE FAULT ACT

On August 5, 1977, the National Conference on Uniform State Laws adopted the Uniform Comparative Fault Act (UCFA). The UCFA attempted to comprehensively resolve a number of major issues relating to comparative fault, including how it is defined, its use in apportioning damages, the role of contribution, and how a prior release affects all of the above. Because our Legislature's effort at

[5] *Id.,* pp 323-324.

[6] *Id.,* p 324.

[7] *Id.*

tort reform, § 6304, is loosely based on a blend of § 2 and § 5 of the UCFA, with a dash of governmental immunity thrown in for good measure, a discussion of the uniform statute's workings provides insight into the workings of the Michigan statute.

Section 1 of the UCFA "states the general principle, that a plaintiff's contributory fault does not bar his recovery, but instead apportions damages according to the proportionate fault of the parties." (Section 1, comment.) In a nutshell, § 1 establishes a pure comparative fault system, eliminating the older concept of contributory negligence as a bar to recovery.

Section 2 is the most important portion of the UCFA for our purposes, because it served as a template for the Michigan statute. Section 2 (apportionment of damages) provides:

(a) In all actions involving fault of more than one party to the action, including third-party defendants and persons who have been released under Section 6, the court, unless otherwise agreed by all parties, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings, indicating:

(1) the amount of damages each claimant would be entitled to recover if contributory fault is disregarded; and

(2) the percentage of the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, and person who has been released from liability under Section 6. For this purpose the court may determine that two or more persons are to be treated as a single party.

(b) In determining the percentages of fault, the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(c) The court shall determine the award of damages to each claimant in accordance with the findings, subject to any reduction under Section 6, and enter judgment against each party liable on the basis of rules of joint-and-several liability. For purposes of contribution under Sections 4 and 5, the court also shall determine and state in the judgment each party's equitable share of the obligation to each claimant in accordance with the respective percentages of fault.

(d) Upon motion made not later than [one year] after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. The party whose liability is reallocated is nonetheless subject to contribution and to any continuing liability to the claimant on the judgment.

Subsections (a) and (b) explain the role of the trier of fact in apportioning damages. Under (a), the factfinder *shall* decide (1) the amount of damages the claimant[8] would be entitled to if contributory fault is not considered, and (2) the percentage of total fault of all of the parties to each claim. Subsection (b) explains that when determining the percentages of fault, the factfinder shall consider both the conduct of the parties at fault and the causal relation between the conduct and damages claimed. Both (a) and (b) note that the fault of "person[s] who [have] been released under Section 6" is to be considered when the factfinder makes its findings.

The comments on UCFA § 2 help explain how (a)

---

[8] The UCFA's use of the word "claimant," rather than plaintiff as in MCL 600.6304; MSA 27A.6304, seems due to the anticipation that counterclaims will be handled under the UCFA, see § 3. As a practical matter, this distinction is immaterial in the present case.

and (b) work. First, the "limitation to parties to the action means ignoring other persons who may have been at fault with regard to the particular injury but who have not been joined as parties." At first this limitation seems to run contrary to the express language of (a) regarding persons who have been released under § 6. However, although not entirely clear from the comment, the statute seems either to define the released persons as parties[9] or contemplates that they were at one time parties to the action. Under either interpretation, the hypothetical example makes it clear that released tortfeasors are considered by the factfinder and their fault is established. The limitation on parties is intended to force both plaintiffs and defendants to join anyone who may be liable, so that the judgment later rendered by the court is as complete as possible.

The comments on § 2(a) and (b) also explain that the "total of the several percentages of fault for the plaintiff and all defendants, as found in the special interrogatories, should add up to 100%."

Although out of order, it is appropriate here to focus on § 6 to the UCFA, because it. figures so prominently in both the determination of fault and the concepts of reallocation. Section 6 (effect of release) states:

> A release, covenant not to sue, or similar agreement entered into by a claimant and a person liable discharges that person from all liability for contribution, but it does not discharge any other persons liable upon the same claim unless it so provides. However, the claim of the releasing person against other persons is reduced by the

---

[9]   (a) In all actions involving fault of more than one party to the action, *including* third-party defendants and persons who . have been released . . . . [Emphasis added.]

amount of the released person's equitable share of the obligation, determined in accordance with the provisions of Section 2.

Section 6 discharges a released person from all contribution and then reduces the releasing person's claim against the remaining defendants by the released person's equitable share. By contrast, Michigan's release statute, MCL 600.2925d; MSA 27A.2925(4) reduces a plaintiff's damages claim by the monetary amount of settlement:

When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:

(a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide.

(b) It reduces the claim against the other tortfeasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

This difference is significant. Under the UCFA, the plaintiff absorbs the losses from a settlement that is lower than the released party's percentage of fault. Under § 2925d, the remaining defendants absorb the cost. A hypothetical example in the comment on § 6 helps to illustrate the difference:

A was injured through the concurrent negligence of B, C and D. His damages are $20,000. A settles with B for $2,000.

The trial produces the following results:

A, 40% at fault (equitable share, $8,000).

B, 30% at fault (equitable share, $6,000).

C, 20% at fault (equitable share, $4,000).

D, 10% at fault (equitable share, $2,000).

A's claim is reduced by B's equitable share ($6,000).

A absorbs the difference between B's equitable share and the settlement, in the hypothetical example, $4,000. By comparison, under § 2925d, only $2,000 would be subtracted from A's total damages, increasing the total damages owed by the other defendants by their proportion of fault. The full effect of this difference will also be addressed later in the opinion. For present purposes, the important point is that under the UCFA, the percentage of fault of settling defendants is determined by the factfinder.

UCFA § 2(c) directs the court to determine the award of damages to each claimant, subject to any reduction under § 6, which reduces the plaintiff's damages by the equitable share of any released party. The judge enters judgment against each party liable on the basis of rules of joint and several liability. The judge then determines and states in the judgment, for purposes of contribution under §§ 4 and 5, each party's equitable share of the obligation to the plaintiff in accordance with their respective percentages of fault. While a judgment of joint and several liability would not be entered against settling defendants who are released under § 6, it appears from the hypothetical example in that section, that the percentage of fault of those defendants is also stated in the judgment.

Section 2(c) represents one of the major policy

choices made by the drafters of the UCFA. While the plaintiff's equitable share and any released parties' equitable shares (which are imputed to the plaintiff) are subtracted from the total amount of damages, the plaintiff is free to pursue any liable defendant for the entire remaining amount as determined under subsection (a)(1). While at first glance the use of joint and several liability in a comparative fault statute seems counterintuitive, the contribution rules found in §§ 4 and 5, and the reallocation provisions found in subsection 2(d), substantially limit the recovery of a plaintiff at fault or who has assumed an equitable share of fault through settlement. The use of joint and several liability appears to serve at least two obvious purposes under the UCFA: (1) wholly innocent plaintiffs receive full compensation, and (2) plaintiffs at fault receive the majority of their money, although they remain subject to the risks of reallocation and certain forms of contribution.

The effect on defendants of the UCFA's use of joint and several liability is tempered by subsection 2(d), which provides that "[u]pon a motion made not later than one year after judgment," the court shall determine if part or all of a party's equitable share of the judgment is uncollectible. If it is, the court shall reallocate any uncollectible amount among the other parties, including a claimant at fault, according to their respective percentages of fault. The party whose share is reallocated still remains subject to contribution.

Under the UCFA, "[r]eallocation takes place among all parties at fault. This includes a claimant who is contributorily at fault. It avoids the unfairness both of the common-law rule of joint and several liability, which would cast the total risk of uncollectibility on the solvent defendants, and a rule abolishing joint and several liability,

which would cast the total rule of uncollectibility on the claimant," comment on § 2.[10] Sections 4[11] and 5 delineate the right to, and enforceability of, contribution under the UCFA. These provisions, along with the right to reallocation, are intended to modify the traditional effect of joint and several liability.

Section 4 (right of contribution) provides:

---

[10] Exactly how § 2 works in general and § 6 works in particular is explained in the hypothetical example taken from the comment on § 2:

Illustration No. 2 (Multiple-party situation).

A sues B, C and D. A's damages are $10,000.
A is found 40% at fault.
B is found 30% at fault.
C is found 30% at fault.
D is found 0% at fault.

A is awarded judgment jointly and severally against B & C for $6,000. The court also states in the judgment the equitable share of the obligation of each party:

A's equitable share is $4,000 (40% of $10,000).
B's equitable share is $3,000 (30% of $10,000).
C's equitable share is $3,000 (30% of $10,000).

Illustration No. 3. (Reallocation computation under Subsection [d]). Same facts as in Illustration No. 2.

On proper motion to the court, C shows that B's share is uncollectible. The court orders that B's equitable share be reallocated between A and C. The court orders that B's equitable share be allocated between A and C.

A's equitable share is increased by $1,714 (4/7 of $3,000).
C's equitable share is increased by $1,286 (3/7 of $3,000).

In practice, it is likely that most solvent defendants would have clearly insolvent defendants found to be uncollectible immediately following the close of the plaintiff's case, rather than trying to collect from a plaintiff who has already been paid the full measure of damages.

[11] Section 3 of the UCFA explains the availability of a setoff between a claimant and a counterclaimant. It has no parallel in the Michigan statute. Further discussion of this provision is unnecessary.

(a) A right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death, or harm, whether or not judgment has been recovered against all or any of them. It may be enforced either in the original action or by a separate action brought for that purpose. The basis for contribution is each person's equitable share of the obligation, including the equitable share of a claimant at fault, as determined in accordance with the provisions of Section 2.

(b) Contribution is available to a person who enters into a settlement with a claimant only (1) if the liability of the person against whom contribution is sought has been extinguished and (2) to the extent that the amount paid in settlement was reasonable.

Section 4(a) allows the right to contribution to be exercised whether or not a judgment has been recovered against any or all of the parties. Importantly, the right may be enforced in the original action, using as a basis the equitable shares as determined by the factfinder and judge under § 2 of the UCFA.

Section 4(b) even allows a party who has settled with the plaintiff to offset his losses by seeking contribution if the liability to the plaintiff of the person against the contribution is sought has been extinguished[12] and to the extent the amount paid in settlement was reasonable.

The short comment on § 4 recognizes that §§ 4, 5 and 6 of the UCFA are meant to replace the Uniform Contribution Among Tortfeasors Act (1955), the primary difference in § 4 being the use of proportionate fault rather than pro-rata shares as the basis of contribution.

---

[12] The comment on § 4 provides no guidance about how liability would be extinguished, although § 6 provides an obvious example, when the release provides for the discharge of all tortfeasors.

Section 5 (enforcement of contribution) provides:

(a) If the proportionate fault of the parties to a claim for contribution has been established previously by the court, as provided by Section 2, a party paying more than his equitable share of the obligation, upon motion, may recover judgment for contribution.

(b) If the proportionate fault of the parties to the claim for contribution has not been established by the court, contribution may be enforced in a separate action, whether or not a judgment has been rendered against either the person seeking contribution or the person from whom contribution is being sought.

(c) If a judgment has been rendered, the action for contribution must be commenced within [one year] after the judgment becomes final. If no judgment has been rendered, the person bringing the action for contribution either must have (1) discharged by payment the common liability within the period of the statute of limitations applicable to the claimant's right of action against him and commenced the action for contribution within [one year] after payment, or (2) agreed while action was pending to discharge the common liability and, within [one year] after the agreement, have paid the liability and commenced an action for contribution.

Thus, § 5, like § 4, relies on the judgment of proportionate fault made pursuant to § 2 to effectuate contribution. Accordingly, § 5(a) allows a party to recover on motion against parties whose equitable shares have been established. This feature of the UCFA, like reallocation, appears to promote efficiency by encouraging parties at the outset to include in the action any person or entity who may be liable, so that the entire action can be handled in the same action. Under the UCFA, the plaintiff can sue and pick the defendant he wishes

to collect from, that defendant can force contribution, and then reallocation when someone cannot pay, all before any money changes hands. Even in the case of a wholly innocent plaintiff, who is not subject to reallocation or contribution, the UCFA allows the defendants to settle matters without delay.

Section 5(b) permits contribution to be enforced in a separate action and § 5(c) sets limits on when contribution may be commenced.[13]

There remain two parts of the comment on § 6, earlier discussed, that relate to contribution and merit discussion. First, the comment displays another policy choice made by the drafters of the UCFA:

---

[13] The workings of § 5 are described in two hypothetical examples found in the comment on that section:

Illustration No. 9 (Equitable shares previously established by court).

A sues B and C. His damages are $10,000.
A is found 40% at fault.
B is found 30% at fault.
C is found 30% at fault.
A, with a joint-and-several judgment for $6,000 against B and C, collects the whole amount from B.
On proper motion to the court, B is entitled to contribution from C in the amount of $3,000.

Illustration No. 10 (Equitable shares not established).

A sues B. His damages are $20,000.
A is found 40% at fault.
B is found 60% at fault.
Judgment for A for $12,000 is paid by B.

B then brings a separate action seeking contribution from C, who was not a party to the original action.
C is found to be liable for the same injury, and as between B and C, is found to be 50% at fault.
Judgment for contribution for $6,000 is awarded to B.

The question of the contribution rights of tortfeasors A and B against tortfeasor C, who settled and obtained a release or covenant not to sue admits of three answers: (1) A and B are still able to obtain contribution against C, despite the release, (2) A and B are not entitled to contribution unless release was given not in good faith but by way of collusion, and (3) the plaintiff's total claim is reduced by the proportionate share of C. Each of the three solutions has substantial disadvantages, yet each has been adopted in one of the uniform acts. The first solution was adopted by the 1939 Uniform Contribution Act. Its disadvantage is that it discourages settlements; a tortfeasor has no incentive to settle if he remains liable for contribution. The second solution was adopted by the 1955 Contribution Act. While it theoretically encourages settlements, it may be unfair to the other defendants and if the good-faith requirement is conscientiously enforced settlements may be discouraged.

The third solution is adopted in this Section. Although it may have some tendency to discourage a claimant from entering into a settlement, this solution is fairly based on the proportionate-fault principle.

The alternatives do not mention the position adopted in Michigan, namely, that the plaintiff's total claim is reduced by the amount of money paid. MCL 600.2925d(b); MSA 27A.2925(4)(b). The obvious reason for this omission, is that § 2925d does not contemplate a comparative fault system. More will be said on this subject in discussing Michigan's attempt at tort reform.

Another comment on § 6 relevant to contribution serves as a reminder that a plaintiff who settles absorbs the entire equitable share of the individual released:

A reallocated share of contribution, as provided in Section 2(d), comes within the meaning of this

phrase, and the discharge of the released person under this Section applies to that liability as well. Since the claim is reduced by the amount of the released person's equitable share, the increased amount of that share as a result of the reallocation is charged against the releasing person.

III

HOUSE BILL NO. 5154

The version of § 6304 found in House Bill No. 5154 is based in large part on the language of § 2 of the UCFA. However, in the process of evolution toward the form of the act as eventually adopted, changes began to emerge that indicate that the Michigan Legislature was making different policy choices than the drafters of the UCFA.

HB 5154 provided:

Sec. 6304. (1) In a personal injury action involving fault of more than 1 party to the action, including third-party defendants and persons who have been released from liability pursuant to section 2925d, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:

(a) The total amount of each claimant's damages.

(b) The percentage of the total fault of all of the parties regarding each claim as to each claimant, defendant, and third-party defendant and person who has been released from liability pursuant to section 2925d.

(2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.

(3) The court shall determine the award of damages to each claimant in accordance with the findings under subsection (1), subject to any reduction under section 2925d(b) or 6303, and enter judgment against each party except that judgment shall not be entered against a person who has been released from liability pursuant to section 2925d. Except as provided in subsection (4), a person shall not be required to pay damages in an amount greater than his or her relative degree of fault.

(4) Upon motion made not later than 1 year after judgment is entered, the court shall determine whether all or part of a party's equitable share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties, including a claimant at fault, but not including a person who has been released from liability pursuant to section 2925d, according to their respective percentages of fault as determined under subsection (1). A party shall not be required to pay a percentage of any uncollectible amount which exceeds that party's percentage of fault as determined under subsection (1). The party whose liability is reallocated continues to be subject to contribution and to any continuing liability to the claimant on the judgment.

The only substantive difference between parts (1) and (2) of the HB 5154 version of § 6304 and parts (a) and (b) of UCFA § 2 is the language relating to released parties. House Bill 5154 called for the factfinder to consider parties released pursuant to § 2925d, and the UCFA called for consideration of those released pursuant to § 6. To fully understand what this difference means, it is necessary to review the state of the law at the time HB 5154 was proposed.

In *Mayhew v Berrien Co Rd Comm,* 414 Mich 399; 326 NW2d 366 (1982), this Court considered

facts and arguments similar to those presented today. In that case, the defendant road commission argued that this Court's adoption of comparative negligence in *Placek v Sterling Heights,* 405 Mich 638; 275 NW2d 511 (1979), and the Legislature's adoption of the same concept for products liability in MCL 600.2949; MSA 27A.2949 implicitly modified the statutory method for setting off a settlement amendment. The defendant argued that "comparative fault must apply to all tortfeasors, including settling tortfeasors, which means that plaintiff's total damage recovery must be reduced by the settler's proportionate share of fault rather than the value of the settlement." *Id.* at 405. We rejected the defendant's arguments on both statutory and public policy grounds.

The unanimous Court in *Mayhew, supra* at 405, began by noting that, while the defendants' "argument is not without logic," it must fall to legislative intent; "when the Legislature, by 1982 PA 147, amended § 2925b and did not amend § 2925d of the contribution between joint tortfeasors section of the Revised Judicature Act, the Legislature gave this Court a strong signal that it intended § 2925d to remain viable rather than be superseded by inference by *Placek* or the products liability comparative negligence statute." *Mayhew, supra* at 410. Section 2925d defined, both at the time of *Mayhew* and HB 5154,[14] the effect of a release or covenant not to sue. It provides:

> When a release or a covenant not to sue or not to enforce judgment is given in good faith to 1 of 2 or more persons liable in tort for the same injury or the same wrongful death:
> (a) It does not discharge any of the other tortfeasors from liability for the injury or wrongful death unless its terms so provide.

---

[14] No amendment was proposed in the House bill.

(b) It reduces the claim against the other tort-feasors to the extent of any amount stipulated by the release or the covenant or to the extent of the amount of the consideration paid for it, whichever amount is the greater.

(c) It discharges the tort-feasor to whom it is given from all liability for contribution to any other tort-feasor.

We concluded that the statute provides "that the total share of damage liability of non-settling tortfeasors should be the entire amount of damages minus the value of the settlement rather than minus the proportionate share of fault of the settling tortfeasor" interpretation, finding this construction "consistent with the ever-important policies of (1) encouraging settlements and (2) assuring that a plaintiff is fully compensated for the injuries sustained." *Id.* at 407, 411-412.[15]

*Mayhew* was the state of the law at the time HB 5154 was proposed. Under subsection (1) of that bill, the *Mayhew* prohibition against consideration by the factfinder of the fault of settling tortfeasors was eliminated. However, as subsection (3) illustrates, § 2925d survived untouched, apparently

---

[15] We explained:

Furthermore, numerous difficulties would be presented if we were to allow the jury to apportion damages among all tortfeasors, including a settling non-party. It would mean that the settling tortfeasor's liability would be assessed without anyone adequately representing that interest. It would put the plaintiff in a unique trial situation. The plaintiff would not only have to advocate that he was not at fault, he would have to convince the jury that the non-party was only minimally at fault. Otherwise, there might be too great a percentage of fault attributed to the non-party, thus reducing the plaintiff's recovery.

. . . We are not persuaded that the judgment should be reduced by the percentage of relative fault as opposed to the amount of settlement. [*Id.* at 412.]

with the *Mayhew* interpretation of that section likewise intact.

Subsection (3) represents another dramatic shift from the UCFA, although again much of the language is similar. Under subsection (3), after the factfinder determines the degree of fault of all tortfeasors under subsection (1), the judge is to determine the award of damages to each plaintiff, subject to any reductions under § 2925d and MCL 600.6303; MSA 27A.6303.[16] This language is nearly identical to that found in UCFA § 2(c). However, at the point at which the UCFA imposes judgment on the basis of joint and several liability, and directs the judge to state in the judgment the fault of all of the parties for contribution purposes, subsection (3) takes a different tack and directs that, except as provided in the following subsection (4), a person shall not be required to pay damages in an amount greater than the relative degree of fault. Subsection (3) also announces that a judgment shall not be entered against anyone released under § 2925d.

The effect of subsection (3) is to almost entirely eliminate joint and several liability, replacing it with a slightly diluted form of comparative fault. Whereas the UCFA used contribution and reallocation to ameliorate the harsh effects of joint and several liability, HB 5154, although it still uses reallocation under subsection (4), shifts most of the risks of obtaining a judgment onto the plaintiff, thereby avoiding joint and several liability.[17]

While a complete interpretation of HB 5154 is

---

[16] Section 6303 allows a personal injury tort defendant to reduce total damages by the amount paid by certain collateral sources pursuant to a specific formula. It does not cover noneconomic damages.

[17] Subsection (4) of HB 5154 provides for reallocation, and is almost identical to UCFA § (2)(d).

unnecessary for present purposes, some conclusions can be drawn. Taken as a whole, HB 5154 would have rewritten much of Michigan's personal injury damages law.

The bill would have explicitly done away with the portion of the *Mayhew* holding that prevented a jury from considering the fault of settling tortfeasors.

Although not as clear, it also appears that the House bill provided nonsettling tortfeasors with a double setoff. Section 2925d is still utilized in the House bill, and subsection (3) allows the settlement figure to reduce the total damages as calculated under subsection (1). In this respect, the bill appears to contemplate a joint and several system along the lines of *Mayhew*. However, the bill goes on to limit the amount a party must pay to its relative degree of fault. This limitation is sensible in a system like the UCFA, which does not set off the settling parties' percentage of fault. The monetary value of the settlement is not considered. However, by reducing the total damages for settlement money received pursuant to § 2925d, and by limiting a nonsettling tortfeasor's liability to his percentage of fault relative to all tortfeasors including those that have settled, the House bill seems to attribute both the money *and* the fault of the settling tortfeasors to the plaintiff. If this is the correct interpretation of what the bill intended, HB 5154 would discourage settlement, not promote it.

Finally, HB 5154 would have eliminated joint and several liability in all cases, regardless of the negligence of the plaintiff, and replaced it with a system in which the plaintiff assumed the entire risk of nonpayment, tempered only by the possibility of reallocation.

IV

MCL 600.6304; MSA 27A.6304

The version of § 6304 before us in the present case still contains much of the language originally found in the UCFA. It also includes many of the modifications found in HB 5154. However, the statute as adopted incorporates several policy decisions that distinguish it from its predecessors.

At the time of adoption, § 6304 provided:

> (1) In a personal injury action involving fault of more than 1 party to the action, including third-party defendants, the court, unless otherwise agreed by all parties to the action, shall instruct the jury to answer special interrogatories or, if there is no jury, shall make findings indicating both of the following:
>
> (a) The total amount of each plaintiff's damages.
>
> (b) The percentage of the total fault of all of the parties regarding each claim as to each plaintiff, defendant, and third-party defendant.
>
> (2) In determining the percentages of fault under subsection (1)(b), the trier of fact shall consider both the nature of the conduct of each party at fault and the extent of the causal relation between the conduct and the damages claimed.
>
> * * *
>
> (6) Except as otherwise provided in this subsection and subsection (7), upon motion made not later than 6 months after a final judgment is entered, the court shall determine whether all or part of a party's share of the obligation is uncollectible from that party, and shall reallocate any uncollectible amount among the other parties according to their respective percentages of fault as determined under subsection (1). A party shall not be required to pay a percentage of any uncollectible amount which exceeds that party's percentage of fault as determined under subsection (1). The

party whose liability is reallocated shall continue to be subject to contribution and to any continuing liability to the plaintiff on the judgment.

(7) Notwithstanding subsection (3), a governmental agency, other than a governmental hospital or medical care facility, shall not be required to pay a percentage of any uncollectible amount which exceeds the governmental agency's percentage of fault as determined under subsection (1).

Subsections (1) and (2) of § 6304 are almost identical to the UCFA and HB 5154, with one very important omission: they do not include a reference to released parties. Whereas UCFA § 2(a)(2) referred to "the total fault of all of the parties to each claim that is allocated to each claimant, defendant, third-party defendant, *and person who has been released from liability under Section 6*" and HB 5154 § 6304(1)(b) referred to "the total fault of all of the parties regarding each claim as to each claimant, defendant, and third-party defendant *and person who has been released from liability pursuant to Section 2925d*," § 6304 as enacted only refers to "the total fault of all of the parties regarding each claim as to each plaintiff, defendant, and third-party defendant." (Emphasis added.) While this omission implies that the Legislature did not intend the fault of settling tortfeasors to be considered, the MDOT argues that there are other subsections of § 6304 that suggest the opposite intent. These arguments will be addressed as they appear in the statute.

Subsection (3) has no counterpart in either the UCFA or HB 5154. It provides:

If it is determined under subsections (1) and (2) that a plaintiff is not at fault, subsections (5) and (6) shall not apply.

This subsection represents an apparent policy

choice on the part of the Legislature to protect plaintiffs who are wholly without fault. Under the "pure" form of comparative fault contemplated by HB 5154, even an entirely innocent plaintiff, a plaintiff who was in no way negligent, had to bear the risk of nonrecovery. This was in stark contrast to the UCFA, in which joint and several liability imposed that risk on defendants. As adopted, subsection (3) of § 6304[18] protects the innocent plaintiff through the use of joint and several liability, at least with regard to nongovernmental defendants.

Subsection (3) is important for another reason. It confirms that § 2925d still means what *Mayhew* said it meant, "the total share of damage liability of non-settling tortfeasors should be the entire amount of damages minus the value of the settlement . . . ." *Id.* at 407. Because subsection (3) contemplates joint and several liability, the traditional § 2925d setoff is operative. While it could still be argued that § 2925d has been impliedly changed by the tort reform legislation to contemplate proportional fault, the complete lack of any language countering this Court's rejection of this argument in the joint and several setting, makes the argument that § 2925 has been changed by implication unpersuasive.

Subsection (5) is the foundation for the government's argument that the fault of settling parties is to be considered by the factfinder.

> The court shall determine the award of damages to each plaintiff in accordance with the findings under subsection (1), subject to any reduction under sections 2925d and 6303, and enter judgment against each party, including a third-party defen-

---

[18] Subsection (4) is also original and applies to products liability actions. It will not be discussed further.

dant, except that judgment shall not be entered against a person who has been released from liability pursuant to section 2925d. Except as otherwise provided in subsection (6), a person shall not be required to pay damages in an amount greater than his or her percentage of fault.

The section is identical in language to subsection (3) in HB 5154 in all but one respect.[19] It applies only when the plaintiff is at fault, and contains some language that seems to imply that more than just nonsettling tortfeasors are considered by the factfinder. The MDOT contends that the phrase "except that judgment shall not be entered against a person who has been released from liability pursuant to section 2925d," indicates a legislative intent that the factfinder is to consider released parties in the calculation of fault.

The context in which § 6304 was adopted must be remembered. *Mayhew* was the governing law, and its interpretation of comparative fault precluded factfinder consideration of the fault of settling tortfeasors. Our decision was based on both § 2925d, which was not, and has not, been amended, and the public "policies of (1) encouraging settlements and (2) assuring that a plaintiff is fully compensated for injuries sustained." *Id.* at 411-412. The language of HB 5154 explicitly allowed the factfinder to consider the fault of released parties and would have undone that portion of *Mayhew* that did not allow for such consideration. However, § 6304 as adopted, does not. In light of the case law and legislative history, it is too great a stretch to conclude that the ambiguous language in subsection (5) was intended to accom-

[19] The one difference between the two sections is the directive to the trial judge that judgment is to be entered "against each party, *including a third-party defendant,*" (the emphasized language is new).

plish all that the specific, but eliminated, language found in the House bill would have accomplished.[20]

As a whole, § 6304 as enacted appears to be an attempt to take a less drastic approach to tort reform than was proposed in HB 5154.[21] When a plaintiff is not at fault, the risk of nonrecovery falls on the defendant, and the plaintiff recovers under joint and several liability. When the plaintiff is at fault, the fault of the nonsettling defendants is apportioned among all the parties to the action, who pay according to that fault. This interpretation is consistent with this Court's interpretation in *Mayhew* of § 2925d. The total judgment is reduced only by the settlement amount and the

---

[20] Because this case does not involve facts that call subsection (6) into play, it is unnecessary to extensively explain the operation of that section. In brief, it would appear that at the time it was enacted, and for purposes of this case, § 6304(6) was only applicable in cases involving a plaintiff at fault. While its language is similar to HB 5154, it has reduced the time in which to make a reallocation motion to six months and has deleted the language "including a claimant at fault, but not including a person who has been released from liability pursuant to section 2925d," found in subsection (4) of the House bill. It is unnecessary to speculate how this deletion affects reallocation. Suffice it to say that if the Legislature had intended by the reference to § 2925d in subsection (5) to suggest that the fault of settling parties is to be considered by the factfinder, it did not choose to do so in subsection (6).

The MDOT also relies on subsection (7) to support its argument that the fault of all tortfeasors is to be considered by the factfinder. Like subsections (3) and (4), subsection (7) does not appear in the House bill or the UCFA. The MDOT argues that because the government is not required to pay a percentage of an uncollectible amount greater than its percentage of fault, notwithstanding subsection (3), the factfinder must consider the fault of settling tortfeasors. While the Legislature's exact intent in drafting subsection (7) can only be guessed, what is clear is that the apparent attempt to somehow limit governmental liability is far from the forthright indication of legislative intent that is normally necessary to overrule settled precedent. That being the case, it is unnecessary to further interpret a subsection that is inapplicable under these facts.

[21] The MDOT's argument that the factfinder is not required to apportion damages so that one hundred percent of the fault is accounted for among the parties is rejected. The argument is inconsistent with the conclusion that the Legislature intended to modify the decision *Mayhew* rather than overrule it.

problem of double setoff seemingly suggested in HB 5154 is avoided.[22]

## V

### CONCLUSION

The Court of Appeals affirmance of the trial court's ruling of no actual controversy arguably should have precluded it from reaching the substantive merits. However, because the trial court had jurisdiction to decide the merits, see *Allstate Ins Co v Hayes,* 422 Mich 56; 499 NW2d 743 (1993), the efforts and energy of the parties and this Court weigh in favor of the efficiency of deciding the issue in the instant action. The MDOT is not entitled to have the factfinder determine the fault of settling tortfeasors.[23] The Court of Appeals is affirmed.

RILEY, GRIFFIN, and MALLETT, JJ., concurred with BOYLE, J.

LEVIN, J. (*concurring*). The meritorious question concerns the extent that the joint and several

[22] Left for another day is the question how subsections (6) and (7) of § 6304 as originally enacted are to be applied. In a case involving multiple party defendants and an innocent plaintiff, it could be argued that subsection (7) directs that the government's overall liability be limited to its degree of fault plus any reallocation. Note that recent amendments of § 6304 will further complicate the question because the statute as amended does not change the referenced numbers in subsection (3). The Legislature now seems to be applying both reallocation subsections regardless of the plaintiff's fault. While the significance of reallocation in general is questionable in situations in which joint and several liability applies under the statute, it is for the Legislature to address this situation, not the Court.

[23] However, the Bergdolls and Thrasher were properly dismissed at the outset because the MDOT failed to state a claim. The settlement eliminated the existence of a controversy.

liability of tortfeasors was modified by the 1986
tort reform act.[1]

Section 6304 of the Revised Judicature Act,[2]

---

[1] 1986 PA 178.

[2] (1) In a personal injury action involving fault of more than 1
party to the action, including third-party defendants, the court,
unless otherwise agreed by all parties to the action, shall
instruct the jury to answer special interrogatories or, if there is
no jury, shall make findings indicating both of the following:

(a) The total amount of each plaintiff's damages.

(b) The percentage of the total fault of all of the parties
regarding each claim as to each plaintiff, defendant, and third-
party defendant.

(2) In determining the percentages of fault under subsection
(1)(b), the trier of fact shall consider both the nature of the
conduct of each party at fault and the extent of the causal
relation between the conduct and the damages claimed.

(3) If it is determined under subsections (1) and (2) that a
plaintiff is not at fault, subsections (5) and (6) shall not apply.

(4) Subsections (5) and (6) shall not apply to a products
liability action, as defined in section 2945.

(5) The court shall determine the award of damages to each
plaintiff in accordance with the findings under subsection (1),
subject to any reduction under sections 2925d and 6303, and
enter judgment against each party, including a third-party
defendant, except that judgment shall not be entered against a
person who has been released from liability pursuant to section
2925d. Except as otherwise provided in subsection (6), a person
shall not be required to pay damages in an amount greater
than his or her percentage of fault.

(6) Except as otherwise provided in this subsection and sub-
section (7), upon motion made not later than 6 months after a
final judgment is entered, the court shall determine whether all
or part of a party's share of the obligation is uncollectible from
that party, and shall reallocate any uncollectible amount
among the other parties according to their respective percent-
ages of fault as determined under subsection (1). A party shall
not be required to pay a percentage of any uncollectible
amount which exceeds that party's percentage of fault as
determined under subsection (1). The party whose liability is
reallocated shall continue to be subject to contribution and to
any continuing liability to the plaintiff on the judgment.

(7) Notwithstanding subsection (3), a governmental agency,
other than a governmental hospital or medical care facility,
shall not be required to pay a percentage of any uncollectible
amount which exceeds the governmental agency's percentage of
fault as determined under subsection (1). [MCL 600.6304; MSA
27A.6304.]

added by the 1986 legislation, provides only for findings by the jury or the court of the percentages of fault of each plaintiff, defendant, and third-party defendant who is a "party" to the action. Section 6304 does not provide for findings by the jury or the court of the percentages of fault of tortfeasors who may have settled with injured persons.

We conclude that the Department of Transportation is not entitled to a determination by the jury or the court of its percentage of the fault made after taking into consideration not only the percentage of fault of the plaintiff but also the percentages of fault of the tortfeasors who settled with the plaintiff.

I

This action for a declaratory judgment was commenced by the MDOT against the owners[3] and driver[4] of, and parents[5] of two children who were passengers in, a pickup truck that collided with a truck driven by an MDOT employee. The parents had filed an action in the Court of Claims against the MDOT in January, 1989, which was consolidated with this action for a declaratory judgment some time after this action was commenced in October, 1989. The owners and driver settled with the parents without suit by paying insurance limits of $50,000 to one child and $4,000 to the other child.

The MDOT seeks a declaration in this action determining the percentages of fault of the owners

---

[3] The owners were Randall and Charlene Bergdoll, individually, and doing business as B & H Towing & Recovery.

[4] The driver was Leroy E. Thrasher.

[5] The parents were Robert and Vallerie Johnston, individually, and as guardians and conservators of the estates of Shyrle James Johnston and John Daniel Johnston.

and driver "in causing the accident and any damages which may be awarded in the Court of Claims, and limiting the liability" of the MDOT for damages to the parents in the Court of Claims action to that percentage authorized by § 6304.

The circuit court granted summary disposition, dismissing this action, and the Court of Appeals affirmed. The MDOT argued that it, the nonsettling tortfeasor, is entitled under § 6304 to have the percentages of fault of the owners and driver, the settling tortfeasors, determined by the trier of fact, with the nonsettling tortfeasors' liability limited to its "calculated percentage of fault." The Court of Appeals ruled against the MDOT, stating that § 6304 "does not require the trier of fact to ascertain the percentages of fault of joint tortfeasors who have settled with the injured party and are not parties to a lawsuit between the injured party and the remaining tortfeasor."[6]

The Court of Appeals focused on the language of § 6304, which it said "provides that in a personal injury action 'involving fault of more than 1 party to the action,' the trier of fact shall determine the 'percentage of the total fault of all the parties regarding each claim as to each plaintiff, defendant, and third-party defendant.' "[7]

The Court of Appeals reasoned that the "plain language" of § 6304 "refers to 'parties' to the action,"[8] that the owners and driver were not parties to this action, and concluded that the circuit court was not required to determine their percentages of fault. The Court of Appeals observed that an earlier version of the 1986 tort reform act provided that "a percentage of the total fault would be made not only among parties to the

---

[6] 196 Mich App 320, 322-323; 493 NW2d 457 (1992).

[7] *Id.*, pp 323-324.

[8] *Id.*, p 324.

action, but also among persons who had been released from liability," but that language was deleted from the final version of the act. The Court of Appeals said that this change in the bill was "persuasive evidence that the Legislature did not intend the result argued by the MDOT."[9]

We agree with the reasoning of the Court of Appeals.

II

Subsection (1) of § 6304, by its terms, applies only to a personal injury action "involving fault of more than 1 *party* to the action." Subsection (1) further provides that the judge shall instruct the jury to answer special interrogatories or, if there is no jury, the judge shall make findings concerning the "percentage of the total fault of all of the *parties* regarding each claim as to each *plaintiff, defendant, and third-party defendant.*" (Emphasis added.)

Subsection (2) provides that in making that determination, the trier of fact shall consider "the conduct of each *party* at fault." (Emphasis added.)

Subsection (5) provides that the court shall determine the award of damages to each plaintiff "in accordance with the findings under *subsection (1),*" and enter judgment against "each *party, including a third-party defendant.*" (Emphasis added.)

Although an earlier version of the 1986 tort reform act would have provided, as observed by the Court of Appeals, that a percentage of the total fault would be allocated not only among *"parties"* to the action, but also among *"persons"* who had been released from liability, and the language adverting to such "persons" was removed

---

[9] *Id.*

before the bill was enacted, subsection (5) continues to refer to "person[s]," stating "that judgment shall not be entered against a *person* who has been released from liability pursuant to section 2925d. Except as otherwise provided in subsection (6), a *person* shall not be required to pay damages in an amount greater than his or her percentage of fault." (Emphasis added.)

Subsection (6) provides for reallocation of any uncollectible amount of the judgment "among the other *parties*" according to their percentage of fault as determined under subsection (1), and subsection (7) provides that a governmental agency, other than a governmental hospital, "shall not be required to pay a percentage of any uncollectible amount which exceeds the governmental agency's percentage of fault as determined under subsection (1)." (Emphasis added.)

A

The MDOT argues that the retention of the word "person" in the last clauses of subsection (5) and the language of subsection (7) limiting the liability of an agency other than a governmental hospital to the "percentage of fault as determined under subsection (1)," indicates a legislative purpose to limit the MDOT's liability to its percentage of fault determined after taking into consideration the percentages of fault of the tortfeasors who settled.

The apparent reason for retention of the word "person," rather than "party," in the penultimate sentence of subsection (5) is that the apparent purpose was to provide that a judgment shall not be entered against either a party or a person who had not been a party released from liability pursuant to § 2925d. Similarly, in stating in the very next sentence that "a *person* shall not be required

to pay damages in an amount greater than his or her percentage of fault" (emphasis added), the Legislature, in all likelihood, was simply continuing the idiom of the immediately preceding clause.

The term "person" means and includes, in this context, a party to the action. The use of the word "person" rather than "party" in this one sentence of subsection (5) cannot reasonably be read to have changed all the preceding references to "party" or "parties" to mean "party/parties" *and* "other persons" who are tortfeasors although not a party/parties.

B

The statement in subsection (7) that an agency other than a governmental hospital "shall not be required to pay a percentage *of any uncollectible amount* which exceeds the governmental agency's percentage of fault as determined under subsection (1)" (emphasis added), cannot properly be read as stating also that such an agency's percentage of fault shall be determined under subsection (1) after taking into consideration the percentage of fault of settling tortfeasors.

The limitation set forth in subsection (7) bars only efforts to collect "any uncollectible amount" from an agency other than a governmental hospital. Rather than stating, as the MDOT urges, that the agency's percentage of fault shall be determined after taking into consideration the percentages fault of settling tortfeasors, subsection (7) says only that the agency's percentage of fault shall be "as determined under subsection (1)." Subsection (1) provides for jury and judge findings concerning only the percentages of fault of parties to the action.

C

Returning to the MDOT's argument based on the last sentence of subsection (5), it is especially noteworthy that subsection (5) "does not apply" if it is determined, under subsections (1) and (2), that the plaintiff is not at fault. The plaintiffs in the instant underlying action are the parents of minor children who were riding as passengers in the pickup truck. It is unlikely that any percentage of fault would be allocated by a jury or judge to the child passengers. If the jury finds that neither child passenger was at fault, subsection (5)—stating that "a person shall not be required to pay damages in an amount greater than his or her percentage of fault"—"shall not apply." In such event, the MDOT's argument based on that sentence would "not apply."

The MDOT's argument might indeed "apply" if the jury or a judge finds that a percentage of the total fault should be allocated to the plaintiff. Under the circumstance that § 6304 so clearly states that the sentence in subsection (5) so heavily relied on the MDOT "does not apply" if the trier of fact finds that the plaintiff is not at fault, we do not think that the Legislature contemplated that the trier of fact would, in a case in which it decided that some percentage of fault should be allocated to the plaintiff, then be asked to reconsider the percentages of fault allocated to the plaintiff and the other nonsettling defendant or defendants after taking into consideration the percentages of fault of settling tortfeasors.

We have considered the other arguments advanced by the MDOT, but they do not persuade us to reach a different conclusion.[10]

---

[10] We acknowledge that § 6304 does not specifically require that the

III

The Court of Appeals concluded its opinion with the following statement:

We believe the trial court properly dismissed the MDOT's action for a declaratory judgment. The MDOT is not entitled to contribution from Thrasher and the Bergdolls; therefore, there exists no "actual controversy" sufficient to maintain an action for a declaratory judgment pursuant to MCR 2.605. [196 Mich App 320, 324-325; 493 NW2d 457 (1992).]

The circuit judge dismissed this action for a declaratory judgment for the same reason, namely, the MDOT is not entitled to contribution from Thrasher and the Bergdolls. The circuit judge and

allocation of percentages of fault among nonsettling parties must total one hundred percent of the fault. But that is surely the import of subsection (1)(b), stating that the court or jury shall determine "[t]he percentage of the *total fault* of all the parties regarding each claim as to each plaintiff, defendant, and third-party defendant."

We note in this connection that the MDOT acknowledges that to the extent the conduct of all the tortfeasors, nonsettling and settling, may be considered by the trier of fact "100% of the fault will be allocable . . . ."

The decision of the Court of Appeals does not nullify the very reform the Legislature sought to achieve when it enacted § 6304 to make damages proportionate to degree of fault. Section 6304, as construed by the Court of Appeals and now by this Court, provides for a limitation of the joint and several liability of a defendant or third-party defendant where there is more than one party aligned on the defendant's side of the case. That, as so construed, it does not provide for consideration of the liability of settling tortfeasors does not mean that § 6304 is chopped liver.

Nor do we agree that the decision of the Court of Appeals "judicially repealed the tort reform mandate that damage assessment be commensurate with percentage of fault" or that the Court of Appeals decision "revives the very common law doctrine of joint and several liability the legislature sought to eliminate in *unmistakable terms.*" The Court of Appeals did not judicially repeal the tort reform mandate; rather, it was the Legislature that decided not to include nonsettling tortfeasors in the allocation of percentages of fault. The Legislature did speak in unmistakable terms when it chose to limit the scope of § 6304 to "parties" and not to include other "persons" who were tortfeasors.

the Court of Appeals were both right in concluding that there was no actual controversy between the MDOT and Thrasher and the Bergdolls, but they were also both wrong in concluding that this action for a declaratory judgment should be dismissed because there was no actual controversy.

There was and is an actual controversy between the MDOT and the Johnstons. Paragraph 9 of the complaint[11] sufficiently states the MDOT's claim that it is entitled to a determination under § 6304 of Thrasher's and Bergdolls' fault in order to apply the provisions of § 6304 to any judgment that might be rendered against the MDOT in favor of the Johnstons.

The relief sought, entry of a declaratory judgment limiting the liability of the MDOT for damages to the Johnstons in the Court of Claims action to the "percentage authorized by MCLA 600.6304," is the relief that the MDOT sought by bringing the declaratory judgment action, and that

---

[11] The complaint states:

9. *Under MCLA 600.6304 [MSA 27A.6304], plaintiff [MDOT] is entitled to a determination of defendants Thrasher and Berg- dolls' fault in order to apply the provisions of that act to any judgment which may be rendered against it in favor of the Johnstons* and is also entitled, under the Michigan Contribu- tion Act, to contribution from defendants Thrasher and Berg- doll in the event that plaintiff is obliged to pay more than its legal share of damages to the Johnstons.

Wherefore, plaintiff prays for entry of a judgment for contri- bution in such sum as is legally authorized against defendants Thrasher and Bergdoll, jointly and severally, and

*For entry of a declaratory judgment* determining the percent- age of fault of defendants Thrasher and Bergdoll in causing the accident and any damages which may be awarded in the Court of Claims, and *limiting the liability of plaintiff for damages to the Johnstons in the Court of Claims action to that percentage authorized by MCLA 600.6304 [MSA 27A.6304].* [Emphasis added.]

it has asserted it is entitled to at a trial of the Court of Claims action.[12]

The circuit court had jurisdiction under the pleadings framed by the MDOT to enter a declaratory judgment deciding the actual controversy between the MDOT and the Johnstons. Although there was no "actual controversy" between the MDOT and Thrasher/Bergdolls, there was and is manifestly an "actual controversy" between the MDOT and the Johnstons. The Johnstons have the requisite adverse interest. There is nothing "hypothetical" about the controversy between the MDOT and the Johnstons.

There is no reason, the matter having been fully briefed and argued in the Court of Appeals, with decision adverse to the MDOT in a reported opinion, with briefs on the meritorious question from the Attorney General in behalf of the MDOT and from counsel for the Johnstons, and an amicus curiae brief in support of the position of the MDOT, with full argument in this Court, to say to the parties that they should go through this drill again before the Court of Appeals or the circuit court.

While the Court of Appeals might be seen as having erred in opining with regard to the meaning of § 6304, after it had decided that the circuit judge correctly dismissed the action because of the absence of an actual controversy, since it is clear that the Court of Appeals also erred in concluding that there was no actual controversy, its error was "harmless"—a concept with which this Court is familiar, and applies with great regularity.

It is clear that while, as set forth in *Hayes, supra,* p 74, the determination whether to enter a declaratory judgment "is ordinarily a matter en-

[12] It is noteworthy that consolidation of the Court of Claims action and the circuit court action was granted by a March 5, 1990, order entered by the Court of Claims.

trusted to the sound discretion of the court," neither the circuit court nor the Court of Appeals has discretion to decline to enter a declaratory judgment where the need therefor, as in *Hayes* and here, is apparent. This Court, in *Comm'r of Revenue v Grand Trunk W R Co,* 326 Mich 371, 375; 40 NW2d 188 (1949), said that a circuit judge does not have discretion to refuse to adjudicate a controversy concerning the interpretation of a state tax statute brought in good faith by a state official in the public interest:

> The declaration of rights statute [1929 PA 36], permits the exercise of judicial discretion in determining the existence of an "actual controversy." Such discretion, however, does not extend to refusal to adjudicate a controversy concerning the interpretation of a State tax statute brought in good faith by a State official in the public interest. The declaratory judgment statute is "remedial, and is to be liberally construed and liberally administered with a view of making the courts more serviceable to the people." See section 7 thereof. As said in *City of Muskegon Heights v Danigelis,* 253 Mich 260, 265 (73 ALR 696) [235 NW 83 (1931)]: "If the act is to serve at all, it must be permitted to serve in this instance." [*Comm'r of Revenue, supra.*]

The MDOT similarly sought an interpretation of § 6304 in the public interest.

We join in affirmance of the Court of Appeals.

CAVANAGH, C.J., and BRICKLEY, J., concurred with LEVIN, J.